```
FILED

Sep 05 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ nataliep        DEPUTY
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>SAAD AHMED,<br><br>          Defendant. | Case No. '19 CR3401 W<br><br>I N F O R M A T I O N<br><br>Title 18 U.S.C., Sec. 371 –<br>Conspiracy; Title 18, U.S.C., Sec.<br>2320(a) – Counterfeit Goods<br>Trafficking; and Title 18, U.S.C.,<br>Sec. 2323 – Criminal Forfeiture |

The United States Attorney charges, at all times material:

## Background: Defendant and His Business

1.   Defendant SAAD AHMED was a citizen of the United States residing in the greater Las Vegas, Nevada area.  AHMED was the principal in charge of PhoneParts USA, which was a Las Vegas-based company engaged in the business of selling cellular telephone parts and accessories, among other things.

2.   Since at least September 10, 2012, PhoneParts USA has sold millions of dollars of cell phone parts and related merchandise to cell phone repair businesses and individual consumers.  These goods included cell phone screens, batteries, chargers, and similar products.

NWP: San Diego
6/4/19

3.   The vast majority of goods sold by PhoneParts USA were sourced directly from overseas suppliers based principally in China. AHMED and his employees communicated directly with those suppliers by email, Skype chat, and other electronic means.   AHMED and his employees ordered goods from these suppliers, and chiefly paid for those goods via international wire transfer.

4.   Many of the goods sold by PhoneParts USA bore trademarks or trademarked labels from original equipment manufacturers ("OEMs") such as Samsung Electronics Co., Ltd. ("Samsung") and Apple Inc. ("Apple"), and other manufacturers, as well as trademarks from UL LLC ("UL"), a leading electronics certification company.  Many of these goods, however, were counterfeit.  That is, they were not manufactured (or certified) by the OEMs or other companies whose trademarks they bore, and were instead manufactured and supplied by unrelated parties unlawfully using those trademarks.

Trademarks

5.   A "trademark" is a word, phrase (such as a logo), symbol or design (such as an icon), or a combination thereof, which identifies and distinguishes the source of the goods of one particular manufacturer from those of other manufacturers. A trademark is often a valuable asset, equated with the "good-will" of a business organization, which can influence consumers in purchasing decisions. A "word mark" and a "mark drawing" are types of trademarks.  Trademarks are registered for use in connection with particular types of goods or services.

6.   A trademark serves a variety of purposes. First, it avoids product confusion by allowing consumers to have confidence that two

products for sale bearing the identical trademark were manufactured by the same company and will be of the same quality. Second, it permits consumers to make an informed choice to purchase a name-brand good based upon past experience, word-of-mouth, brand loyalty, and advertising impact. Third, it enables consumers who experience a problem with the name-brand product they have purchased to seek recourse through the actual manufacturer by returning the goods to the seller or seeking warranty or other recourse through the OEM. Fourth, it allows the trademark owner to distinguish and protect its products by giving that company exclusive rights as the trademark owner. This permits the legitimate trademark owner to recoup investments of time, money, labor, and creativity and to profit from its endeavors in bringing a particular product to market.

7.    A counterfeit mark is: (a) a spurious mark used in connection with trafficking in goods; (b) identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register of the United States Patent and Trademark Office and in use, whether or not defendants knew such mark was so registered; and (c) the use of which was likely to cause confusion, to cause mistake, or to deceive.

8.    Samsung and Apple were each companies that manufactured and sold cellular telephone products, including personal cellular telephones (or "smartphones") with extensive computing capabilities. UL was a certification company that provided quality assurance certifications for a wide variety of electronics (including cellular telephones and cellular telephone components) and other goods. The United States Patent and Trademark Office had registered on its

1  principal register a number of trademarks for each company, including

2  the following:

3       a.  trademark  number  2,929,523  and  trademark  number

4  86,438,684 registered the "Samsung logo" for use in connection with

5  computer hardware of a wide variety, as well as mobile phones and

6  batteries;

7       b.   trademark number 2,882,774 registered the "Samsung"

8  stylized word mark for use in connection with computer hardware of a

9  wide variety, as well as mobile phones and batteries;

10      c.   trademark number 2,715,578 registered the "Apple logo"

11  for use in connection with computer hardware and software of a wide

12  variety, including hand held and mobile computers;

13      d.   trademark number 3,928,818 registered the "Apple" word

14  mark for use in connection with computer hardware and software of a

15  wide variety, as well as handheld mobile digital electronic devices

16  for the sending and receiving of telephone calls, electronic mail,

17  and other digital media;

18      e.   trademark number 1,123,070 registered a UL trademark

19  (in the shape of a backwards "RU") for use in connection with

20  electrical equipment.

21  All of these trademarks were in use at all times relevant to this

22  Information.  A counterfeit product was a cellular telephone component

23  bearing one or more counterfeit marks, to wit, marks identical with

24  or substantially indistinguishable from one or more of the above-

25  described trademarks registered by Samsung, Apple, or UL.  The

26  counterfeit marks were each likely to cause confusion, to cause

27  mistake, or to deceive.

28

*Information*                    4                    *Saad Ahmed*

Count 1 – CONSPIRACY

Title 18, U.S.C., §§ 371, 2320(a)

9.    Beginning no later than September 10, 2012, and continuing through June 12, 2018, in the Southern District of California, the District of Nevada, and elsewhere, defendant SAAD AHMED conspired and agreed with an individual using the alias "Alfie Wu," an individual using the alias "Linda Jin," an individual using the alias "Helen Hao," and others known and unknown, to traffic in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a) and Title 18, United States Code, Section 371.

Objects of the Conspiracy

10.    It was an object of the conspiracy that defendant AHMED and his co-conspirators would enrich their businesses and themselves by importing to the United States, obtaining control of, selling, and distributing and transporting in interstate and foreign commerce cellular telephone components bearing counterfeit marks.

Manner and Means of the Conspiracy

11.    To further the criminal conspiracy, defendant AHMED and his co-conspirators utilized the following manner and means, among others:

a.    At all times relevant, defendant AHMED created and maintained internet websites for the advertisement of name-brand cell phone components, including www.phonepartsusa.com.

b.    Since at least September 10, 2012, defendant AHMED would sell counterfeit cell phone components and accessories in foreign and interstate commerce to individual consumers and downstream business customers.

c.   Since at least September 10, 2012, defendant AHMED would purchase counterfeit cell phone components and accessories from co-conspirators known as "Alfie Wu," "Linda Jin," "Helen Hao," and other China-based suppliers of counterfeit merchandise.

d.   Since at least September 10, 2012, the co-conspirators known as "Alfie Wu," "Linda Jin," "Helen Hao," and others would ship counterfeit products to defendant AHMED in foreign and interstate commerce.

e.   At all times relevant, defendant AHMED employed a staff of other individuals at PhoneParts USA, including approximately ten (10) other individuals as of June 12, 2018, for assisting with his counterfeit goods trafficking activities, including communicating with suppliers, warehousing merchandise and fulfilling customer orders.

f.   At all times relevant, defendant AHMED and his co-conspirators would carefully coordinate the shipment of counterfeit goods to thwart their detection by U.S. Customs and Border Protection, as well as foreign authorities, and to minimize the risk of loss if counterfeit goods were detected; among other things, defendant AHMED and his co-conspirators would:

i. Separate shipments containing counterfeit merchandise from other shipments to minimize risk of loss;

ii. Affix protective stickers to merchandise bearing counterfeit trademarks to strategically obscure the marks themselves;

iii.   Include  grossly  undervalued  invoices  with  the
            shipments to discourage inspection; and

iv.   Manage   the   addresses   (and   names)   to   which
            counterfeit  merchandise  was  shipped  in  order  to
            deflect suspicion.

g.    At   all   times   relevant,   defendant   AHMED   enriched
himself  and  his  business  by  receiving  proceeds  from  the  sales  of
counterfeit  cell  phone  components  and  accessories  and  depositing  those
proceeds  into  bank  accounts  which  he  owned  and  controlled.

Overt Acts

12.   In   furtherance   of   the   conspiracy,   and   to   effect   and
accomplish  its  unlawful  objects,  the  following  overt  acts,  among
others,  were  committed  within  the  Southern  District  of  California,
and elsewhere:

a.    On or about September 10, 2012, PhoneParts USA staff
shipped  counterfeit  merchandise  bearing  the  Apple  logo  to  a  customer
located  outside  the  United  States  and  agreed  to  "put  a  sticker  over
the logo for [him]" to deflect attention from Customs;

b.    On October 3, 2012, defendant AHMED directed a China-
based  supplier  of  counterfeit  cell  phone  parts  to  "Just  write  $100"
when  the  supplier  asked  how  much  he  should  write  on  the  shipment's
commercial  invoice  for  its  declared  value;  when  the  supplier  expressed
concern  that  $100  was  too  low,  AHMED  instructed  him  "Okay  lets  do
$250";

c.    On December 16, 2015, a co-conspirator using the alias
"Laura"  emailed  defendant  AHMED  to  ask,  "for  this  order,  shall  we
cover the samsung [sic] logo with a black sticker like last time?";

*Information*                                7                              *Saad Ahmed*

1       d.   On a date unknown within the relevant period, defendant
2   AHMED and his co-conspirators shipped an order of counterfeit Samsung
3   and Apple chargers and earpieces that was seized during shipment by
4   U.S. Customs and Border Protection on June 1, 2016 and was valued by
5   Customs at $46,538;

6       e.   On a date unknown within the relevant period, defendant
7   AHMED and his co-conspirators shipped an order of counterfeit Samsung
8   chargers that was seized during shipment by U.S. Customs and Border
9   Protection on July 21, 2016 and was valued by Customs at $42,531;

10      f.   On a date unknown within the relevant period, defendant
11  AHMED and his co-conspirators shipped an order of counterfeit Samsung
12  digitizers that was seized by U.S. Customs and Border Protection on
13  July 20, 2017 and was valued by Customs at $10,822;

14      g.   On a date unknown, defendant AHMED and his co-
15  conspirators shipped to an address in San Diego California an order
16  of counterfeit Samsung back covers, front glass screens, and batteries
17  to fulfill an order placed on April 21 and April 26, 2016;

18      h.   On or about June 12, 2018, defendant AHMED employed a
19  staff member to process incoming cell phone parts shipments from
20  China, whom he had directed to shred paper invoices accompanying those
21  incoming shipments, which stated false declared values.

22  CRIMINAL FORFEITURE ALLEGATIONS

23  Title 18 U.S.C. § 2323

24     13.   The allegations set out above are realleged and by their
25  reference fully incorporated herein for the purpose of alleging

26

27

28

forfeiture to the United States of America pursuant to the provisions
of Title 18, United States Code, Section 2323.

14.  Pursuant to Title 18, United States Code, Section 2323(b),
upon conviction of the offense set forth in Count 1, defendant SAAD
AHMED shall forfeit to the United States: (a) any article, the making
or trafficking of which is prohibited under section 506 of title 17,
or section 2318, 2319, 2319A, 2319B, or 2320, or chapter 90, of Title
18; (b) any property used, or intended to be used, in any manner or
part to commit or facilitate the commission of the offense; and
(c) any property constituting or derived from any proceeds obtained
directly or indirectly as a result of the offense.  The property to
be forfeited includes, but is not limited to a money judgment in an
amount not less than $296,681, which sum represents proceeds of the
offense.  It furthermore includes all property seized in connection
with this case, including but not limited to approximately 4,453
counterfeit cell phone parts seized on June 12, 2018 from 5145 South
Arville Street, Suite A, Las Vegas, Nevada 89118 by Homeland Security
Investigations.

15.  If any of the above-described forfeited property, as a
result of any act or omission of defendant SAAD AHMED, cannot be
located upon the exercise of due diligence; has been transferred or
sold to, or deposited with, a third person; has been placed beyond
the jurisdiction of the Court; has been substantially diminished in
value; or has been commingled with other property which cannot be
subdivided without difficulty, it is the intent of the United States,
pursuant to Title 21, United States Code, Section 853(p), made
applicable herein by Title 18, United States Code, Sections 2323(b),

*Information*                        9                        *Saad Ahmed*

1    and Title 28, United States Code, Section 2461(c), to seek forfeiture

2    of any other property of the defendant up to the value of the property

3    described above subject to forfeiture.

4

5    All pursuant to Title 18, United States Code, Section and 2323(b).

6

7        DATED:  ___9/5/2019___.

8                                          ROBERT S. BREWER, JR.
                                           United States Attorney

9                                          By: _____

10                                         NICHOLAS W. PILCHAK
                                           Assistant U.S. Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28